\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Zink Waterfowl Designs, Ltd. | : | Case No. |
| 30 Park Drive | | |
| Port Clinton, Ohio 43452 | : | JUDGE |
| | : | **COMPLAINT WITH JURY DEMAND** |
| Plaintiff, | | **ENDORSED HEREON** |
| | : | |
| vs. | : | |
| | : | |
| Avery Outdoors, Inc. | : | |
| c/o Registered Agent | | |
| Corporation Service Company | : | |
| 2908 Poston Avenue | : | |
| Nashville, Tennessee 37203 | : | |
| Defendant. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Zink Waterfowl Designs, Ltd. ("Zink Waterfowl Designs"), by and through its

undersigned counsel, for its complaint against defendant Avery Outdoors, Inc. ("Avery") states

the following:

## PARTIES

1.     Zink Waterfowl Designs is a limited-liability company duly organized under the laws of the State of Ohio, and it has an office and a principal place of business at 30 Park Drive, Port Clinton, Ohio 43452.

2.     Avery is a corporation organized under the laws of the State of Tennessee, and it has a principal place of business at 335 Cumberland, Memphis, Tennessee 38112.

## NATURE OF ACTION

3.     This is an action for moneys due and owing from Avery to Zink Waterfowl Designs for royalty payments to be paid to Zink Waterfowl Designs on Avery's sales of hunting-related equipment designed by Fred Zink in Ohio.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(a), as plaintiff and defendant are diverse citizens, and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

5.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(a)(2), as a substantial part of the events or omissions giving rise to these claims occurred in the Northern District of Ohio, Western Division.

## COUNT ONE – BREACH OF CONTRACT

6.     Fred Zink is a nationally recognized designer of hunting-related equipment.

7.     Avery is a purveyor of hunting-related equipment.

8.     In about 2000, Fred Zink approached Avery to discuss his designs for portable layout ground hunting blinds, and to gauge the interest, if any, that Avery might have in producing and selling such blinds.

9.     Avery had a keen interest in Fred Zink's hunting-blind designs.

10.     Thereafter, Avery started selling Zink-designed blinds (which will be collectively referred to as "Zink Blinds").

11.     In about March of 2001, Avery started selling Fred Zink's blinds under Avery's trademark Finisher Blind®.

12.     Additional Zink-designed blinds followed.

13.     One of these blind designs was a dog blind that was also marketed under Avery's trademark Finisher Blind®.

14.     Other blind designs were marketed under other Avery trademarks, including, but not necessarily limited to, a design which was introduced in about 2001 and sold as the Power Hunter®, a design that was introduced in about 2005 and sold as the Ground Force®, and a design that was introduced in about 2007 and sold as the M-2™.

15.     Additionally, Avery private-labeled Fred Zink ground-blind designs for retailers, including, but not necessarily limited to, Scheels, Sportsman's Warehouse, and Rogers, all of which purchased these blinds from Avery.

16.     Initially, Avery agreed to pay Fred Zink a royalty which was calculated as a fixed-dollar amount per blind sold by Avery.

17.     In about June of 2002, Avery hired Fred Zink, agreed to pay him a salary, and the royalty on the sale of Zink Blinds was changed from a fixed-dollar-amount-per-blind arrangement to an arrangement whereby Mr. Zink would be paid a royalty of seven percent of Avery's gross sales of Zink Blinds.

18.     Since 2001, Avery has paid royalties on its sales of Zink Blinds.

19. In 2006, Fred Zink assigned his rights to Avery royalties to Zink Waterfowl Designs, and the parties agreed that subsequent royalty payments would be made to Zink Waterfowl Designs.

20. Accordingly, since 2006, Avery has paid Zink Waterfowl Designs hundreds of thousands of dollars in royalties based on sales of Zink Blinds.

21. In 2008, Alan Hughes of Avery promised that, for 2008 and subsequent years, Avery would pay Zink Waterfowl Designs an annual royalty for Zink Blinds equal to seven percent of gross sales of Zink Blinds or $200,000 per year, whichever was greater.

22. At all times relevant, Mr. Zink and Zink Waterfowl Designs have performed all of their duties under the contract.

23. Nevertheless, for Zink Blinds sold in 2008, Avery paid Zink Waterfowl Designs only $164,647.02.

24. Avery owes Zink Waterfowl Designs at least $35,352.98 for unpaid 2008 royalties.

25. Avery sold Zink Blinds in 2009, and continued selling them in 2010, yet Avery has failed to pay any royalty to Zink Waterfowl Designs for those sales.

26. Avery owes Zink Waterfowl Designs at least $200,000 for unpaid 2009 royalties, and at least $200,000 for unpaid 2010 royalties.

## COUNT TWO – BREACH OF CONTRACT

27. Zink Waterfowl Designs restates the factual averments of the preceding paragraphs as if fully restated herein.

28. In 2002, Tom Matthews of Avery solicited Fred Zink's advice regarding the expansion of Avery's business.

4

29. Fred Zink advised that Avery should produce hunting decoys.

30. In 2002, while Fred Zink and Tom Matthews were traveling to visit the manufacturer of the Finisher Blind®, Tom Matthews promised that Avery would pay a two-percent royalty on all decoys designed by, or under, Fred Zink, and sold by Avery.

31. This royalty was to be calculated upon Avery's gross sales of decoys.

32. The 2002 move into decoys marked a dramatic turning point for Avery, which had been in dire financial straits.

33. In 2002, Fred Zink began working diligently on the first of dozens of decoys that were carved by Fred Zink personally, or were carved under his supervision by master carvers (all of these decoys are collectively referred to hereinafter as "Zink Decoys").

34. In 2004, Fred Zink spent a total of 157 days in China working to set up manufacturing for Avery, from molding, to painting, to packaging.

35. Since 2002, Avery has sold millions of dollars of decoys.

36. At all times relevant, Mr. Zink and Zink Waterfowl Designs have performed their duties under the contract.

37. Despite Fred Zink's efforts, Avery has failed to pay the two-percent royalty on decoy sales.

38. Thus, Avery owes Zink Waterfowl Designs the sum of 2% of all gross sales of Zink Decoys, the exact amount to be determined at trial.

## COUNT THREE – PROMISSORY ESTOPPEL

39. Zink Waterfowl Designs restates the factual averments of the preceding paragraphs as if fully restated herein.

40.     Avery promised Fred Zink and Zink Waterfowl Designs that it would pay the royalties described above.

41.     Avery knew, or reasonably should have known, that these promises would induce certain action and forbearance on the part of Fred Zink and Zink Waterfowl Designs, including, but necessarily limited to, Fred Zink's creation of hunting-related products for Avery, the forbearance of Zink Waterfowl Designs from competing with Avery in various respects, and so on.

42.     Avery intended Fred Zink and Zink Waterfowl Designs take such actions, and forbear from taking others, and such action and forbearance did occur.

43.     Avery has reaped millions of dollars in revenues in connection with the sale of Zink-designed goods.

44.     Avery has failed to remit the share of those revenues to which Zink Waterfowl Designs is entitled.

45.     Avery's retention of the sums owed is unfair and unjust.

46.     Under these circumstances, Avery's promises to pay the aforementioned royalties must be enforced, as such enforcement is the only way to avoid unjust results.

### COUNT FOUR – UNJUST ENRICHMENT

47.     Zink Waterfowl Designs restates the factual averments of the preceding paragraphs as if fully restated herein.

48.     Avery knows that the goods at issue were created using Zink designs, that Mr. Zink and Zink Waterfowl Designs permitted Avery to use the designs, and that Avery chose to use those designs and the benefits they provided.

49.     Avery has generated large sums of money by the use of Zink-designed goods, but it has refused to pay the royalties to that were agreed upon.

50.     Avery's retention of these benefits without compensation therefore is unjust.

**WHEREFORE**, Plaintiff prays:

a.      that Avery be ordered to render an accounting unto Zink Waterfowl Designs of all of its sales of Zink Blinds and Zink Decoys;

b.      that Avery be ordered to pay to Zink Waterfowl Designs the balance of royalties due and owing to it for Avery's sales of Zink Blinds;

c.      that Avery be ordered to pay to Zink Waterfowl Designs a sum equal to two percent of Avery's gross sales of Zink Decoys;

d.      that Avery be ordered to render an accounting unto Zink Waterfowl Designs on January 31, 2011, and each January 31 thereafter, of all of its gross sales of Zink Blinds for the preceding calendar year and to pay to Zink Waterfowl Designs with the accounting a sum equal to seven percent of those gross sales or $200,000, whichever is greater;

e.      that Avery be ordered to render an accounting unto Zink Waterfowl Designs on January 31, 2011, and each January 31 thereafter, of all of its gross sales of Zink Decoys for the preceding calendar year and to pay to Zink Waterfowl Designs with the accounting, a sum equal to two percent of those gross sales;

f.      that interest upon the sums due be paid; and

g.      and all other relief and costs deemed appropriate by this Court be awarded in favor of Zink Waterfowl Designs.

ZINK WATERFOWL DESIGNS, LTD.

By /s/ Steven R. Smith
    Steven R. Smith (0031778)
    ssmith@cjc-law.com
    Janine T. Avila (0055853)
    javila@cjc-law.com
    Timothy P. Nackowicz (0076294)
    tnackowicz@cjc-law.com
    Connelly, Jackson & Collier LLP
    405 Madison Avenue, Suite 1600
    Toledo, Ohio  43604
    Telephone:  419.243.2100
    Facsimile:   419.243.7119

    David C. Purdue (0001977)
    dpurdue@purdue-law.com
    Purdue Law Offices, LLC
    2735 N. Holland-Sylvania Rd., Suite B-2
    Toledo, Ohio  43615
    Telephone:  419.531.0599
    Facsimile:   419.531.0362

    Counsel for plaintiff Zink Waterfowl
    Designs, Ltd.

## JURY DEMAND

Plaintiff demands a trial by jury.

By /s/ Steven R. Smith
    Counsel for plaintiff Zink Waterfowl
    Designs, Ltd.